OPINION OF THE COURT
Laura A. Ward, J.
The defendant is charged in a misdemeanor information with two counts of assault in the third degree, in violation of Penal Law § 120.00 (1). In his motion, the defendant seeks, inter alia, an order dismissing the information as facially insufficient pursuant to CPL 170.35. This court has examined the defendant’s motion, the People’s response, and the applicable case law. For the reasons set forth below, the defendant’s motion is denied.
The defendant and the complainant are husband and wife. The information alleges that the defendant assaulted the complainant on two separate occasions, January 10, 1998,[1] and May 9, 1998.[2] The allegations are supported by the certified medical records and the police officer’s deposition. The complainant recanted her prior statements and refuses to testify.
The medical records include statements by the complainant that she was “assault [ed] by her husband” in January 1998 and that she was “assault [ed] by husband, sustaining fist blows to [her] head, arms [and] back” and that she was “being beaten up by [her] husband” on May 9, 1998.
The police officer, responding to a “911” call received on May 9, 1998, arrived at the complainant’s home within one minute of receiving the call. The police officer heard the defendant yelling at the complainant and observed the complainant crying, “crouched on the floor between the ottoman and couch.” When he asked the complainant what happened, the complainant responded “My husband hit me. He beat me.” The police of *346 ficer also observed that the complainant’s face had multiple bruises which appeared to be freshly inflicted, and the complainant “appeared to be under the stress of the incident when she spoke.”
The defense argues that the information should be dismissed as facially insufficient because it contains inadmissible hearsay. The defendant claims that the complainant’s statement contained in hospital records is inadmissible under the “business records” exception to the hearsay rule because the statement was not essential to the complainant’s diagnosis and treatment. Second, the defendant alleges that the complainant’s response to a police officer’s question is inadmissible under the “excited utterance” exception because the original information did not state the time that had elapsed between the occurrence and the statement, and because the reliability of the statement could not be tested since the complainant refused to testify.
The People argue that the defendant’s claims should be rejected, and have attached the superseding information which specifies the amount of time that had elapsed between the “911” call and the complainant’s statement. The superseding information also alleges that when the police officer arrived at the scene, the dispute was still in progress, and the police officer heard the defendant yelling and observed the complainant “crying, crouched on the floor between the ottoman and couch.” The superseding information also alleges that the police officer observed “multiple bruises” on the complainant’s face, which “appeared to be freshly inflicted.”
Pursuant to CPL 100.40 (1) (c), an information is sufficient on its face when “[n] on-hearsay allegations of the factual part of the information and/or of any supporting depositions establish, if true, every element of the offense charged and the defendant’s commission thereof.” “Non-hearsay” refers to that type of evidence which would be admissible at trial. (People v Hurtado, 116 Misc 2d 897 [Crim Ct, NY County 1982]; see also, People v Alvarez, 141 Misc 2d 686 [Crim Ct, NY County 1988] [holding that while the defendant’s alleged statements to arresting police officer were hearsay, they were considered to be “non-hearsay” because they would be admissible at trial under an exception to the hearsay rule].)
“Business records” Exception
The New York “business records” exception to. the hearsay rule, codified in CPLR 4518 (a), is applicable to both criminal and civil cases. (See, People v Howard, 79 AD2d 1064 [3d Dept *347 1981], citing People v Foster, 27 NY2d 47 [1970].) CPLR 4518 (a) provides that: “[a]ny writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible in evidence in proof of that act, transaction, occurrence or event, if the judge finds that it was made in the regular course of any business and that it was the regular course of such business to make it, at the time of the act, transaction, occurrence or event, or within a reasonable time thereafter * ** * The term business includes a business, profession, occupation and calling of any kind.”
A statement contained in a hospital record is admissible under the “business records” exception, if that statement is germane to the medical diagnosis or treatment of the patient. In Williams v Alexander (309 NY 283, 287), the Court held that since the “business of a hospital * * * is to diagnose and treat its patients’ ailments * * * the only [statements that may fall within this exception] are those reflecting acts, occurrences or events that relate to diagnosis, prognosis or treatment or are otherwise helpful to an understanding of the medical or surgical aspects of [the particular patient’s] hospitalization.”[3] Consequently, an entry in a hospital record containing a witness’ statement of the details of the accident which .produced his or her injury, but which has no bearing upon diagnosis or treatment, is not admissible under CPLR 4518 as it is not considered as having been made in the regular course of the hospital’s business. (See, Williams v Alexander, *348 309 NY 283, 287 [1955] [interpreting Civ Prac Act § 374-a, the predecessor of CPLR 4518 (a)].)
Courts have held that the statements regarding the manner in which an injury was inflicted may come within the “business records” exception to the hearsay rule (see, Williams v Alexander, 309 NY 283, 288, supra [“(I)n some instances, (the witness’) explanation as to how he was hurt may be helpful to an understanding of the medical aspects of his case; it might, for instance, assist the doctors if they were to know that the injured man had been struck by an automobile.”]).[4] In Taragan v Abbott Labs. (NYLJ, Mar. 27, 1992, at 22, col 1, supra), the court distinguished between the patient’s statement that “his leg was injured when he was hit by a car”, which would be *349 admissible if necessary and useful for treatment, and the patient's additional statement that "the car was a red BMW that had gone through a light", which would be excludable. The court wrote (at 22, col 2) that "[w]hen a doctor asks a patient for a history, he or she does not do so to pry or to strike up a friendship. The purpose is to make the doctor aware of the patient's past medical problems and medically relevant experience and thus guard against any risks the patient may be running in light of the history."[5]
Additionally, the treatment of a domestic violence victim’s apparent physical injuries is closely associated with the victim’s emotional well-being. Unlike other types of assault, domestic violence results not only in physical injuries to its frightened and battered victims but also will have a traumatic impact on the victims’ psychological well-being. Battered Woman Syndrome has become a recognized diagnosis.[6] In this sense, domestic violence causes damage that goes beyond merely visible physical injuries and is very similar to child abuse,[7] which if gone undetected may seriously injure the person’s human dignity.
In the instant case this court finds the statements made by the complainant to the hospital doctor were made for the purposes of treatment, and therefore they are within the exception to the hearsay rule and are admissible as “business records”. Identifying a patient as a domestic violence victim is relevant to a patient’s diagnosis and treatment. In the instant case, the hospital document, called “Triage note”, has a note of “Domestic violence” in its “Diagnosis” section. Moreover, the *350 “Clinic Referral” section of the same document has a notation of “Crime Victims Treatment Center” and an instruction to continue “treatment” at the Center. The hospital also has special domestic violence forms to be filled out by domestic violence victims. These forms were a part of the complainant’s medical record. All these hospital records were prepared in the ordinary course of business and it was the ordinary course of business to prepare such records by the hospital personnel. Therefore, the hospital records are all admissible.
“Excited utterance” Exception
A statement may be admitted as an “excited utterance” if: (1) the statement was made contemporaneously or immediately after a startling or upsetting event (People v Simms, 244 AD2d 920 [4th Dept 1997]; People v Vasquez, 88 NY2d 561, 573, 579 [1996], citing People v Brown, 70 NY2d 513, 518 [1987]; People v Nieves, 67 NY2d 125, 135 [1986], citing People v Edwards, 47 NY2d 493 [1979]); (2) the declarant was under the stress of excitement, or shock, or trauma at the time the utterance was made, and before the declarant had the opportunity to reflect and fabricate (People v Edwards, 47 NY2d 493; People v Vasquez, 88 NY2d 561, 579, citing People v Brown, 70 NY2d, at 516-517; People v Simms, 244 AD2d 920; People v Van Patten, 125 AD2d 827, 828, citing People v Egan, 78 AD2d 34, 37; People v Nieves, 67 NY2d 125, 135).
The nature of the attack on the complainant — abuse by a family member — was undeniably traumatic and could have triggered the “excited utterance” by the complainant. The complainant sustained multiple bruises to her face and chest, an injury to her left ear resulting in diminished hearing, and blows to her head, arms and back. When the police officer arrived at the scene he observed the defendant yelling at the complainant; he observed the complainant crouched on the floor between the ottoman and couch — a battered woman— crying and cowering in fear. It is clear that there was no time for reflection. There was no time for the complainant to fabricate the incident or the defendant’s participation in the incident. Therefore, this court finds that there was sufficient evidence in the record to conclude that the statement was made spontaneously, under the stress of a startling event, and “not made under the impetus of studied reflection.” (People v Edwards, 47 NY2d, supra at 497.)
*351 For the reasons set forth above, the defendant’s motion to dismiss for facial insufficiency is denied.

. The information alleges that on January 10,1998, the defendant struck the complainant in the chest with his hands, causing her to sustain a fractured rib and to seek medical attention at the hospital on January 11, 1998.

. The information also alleges that the defendant struck the complainant in the face and head with defendant’s hands on May 9, 1998, causing large bruises to her eyes and chin, and diminished hearing in her left ear. The complainant complained of domestic violence and “assault by husband, sustaining fist blows to head, arms, back,” “[arrow pointing down] hearing L ear,” “pain to L ear L side of face [?] to being beaten up by husband,” “my L eye hurts,” “blurry vision L eye,” and “muffled hearing.”

. See also, Freeman v Kirkland, 184 AD2d 331 (1st Dept 1992) (admitting into evidence the entire medical file of the plaintiffs treating physician, because the treating physician testified that it related to his diagnosis and treatment of the plaintiffs injuries); People v Davis, 225 AD2d 449 (1st Dept 1996) (holding that the hospital record related to the diagnosis and treatment of the complaining witness and was admissible); Taragan v Abbott Labs., NYLJ, Mar. 27, 1992, at 22, col 1 (holding that the statements should be admissible “as exceptions to the hearsay rule when they are made by the patient to the physician for the purpose of obtaining treatment and diagnosis * * * [and] statements not necessary to obtain medical assistance [should be] excluded”); Matter of Fred S., 66 Misc 2d 683 (Fam Ct 1971) (holding that entries in hospital records qualified for admission under the exception if made in the regular course of the hospital’s work and for the purpose of assisting in procedures relating to its activities [such as diagnosis, prognosis and treatment] or in some way assisting the undertaking of the medical or surgical aspects of the patient’s hospitalization); Matter of Williams v Allied Trades Union, 34 AD2d 717 (3d Dept 1970) (admitting a hospital record containing an entry that the decedent’s fatal attack commenced while “ ‘he was shoveling snow’ ” on the ground that it contained information necessary to the diagnosis and treatment of the decedent’s condition).

. People v Evans, 250 AD2d 484 (1st Dept 1998) (holding that the complainant’s statements were admissible); People v Goode, 179 AD2d 676, 677 (2d Dept 1992) (holding that the portion of the complainant’s hospital records indicating that the complainant had “[cjlaimed he was hit with a fist, and there was a metal object in the fist” was relevant to the diagnosis and treatment of the complaint’s injuries); People v Singleton, 140 AD2d 388 (2d Dept 1988) (holding that the complainant’s unredacted hospital record which indicated that the complainant was “ “hit in face’ ” was admissible and relevant to the diagnosis and treatment of the complainant’s injuries); People v Davis, 95 AD2d 837 (2d Dept 1983) (holding that the statement that the complainant sustained a gunshot wound to the chest and upper left arm was admissible); People v Bailey, 252 AD2d 815 (3d Dept 1998) (holding that the statement that “ ‘[t]he patient states that yesterday [a person] kissed and sucked on her neck and placed his penis between her legs’ ” was germane to her subsequent medical treatment and diagnosis, was directly relevant to the manner in which she had been injured, and therefore was admissible under business records exception); People v Howard, 79 AD2d 1064 (3d Dept 1981) (holding that the complainant’s hospital records indicating the extent of his injuries were properly admitted); People v Brown, 248 AD2d 742, 743 (3d Dept 1998) (holding that the medical records concerning nature of victim’s injuries were admissible without redaction to eliminate use of word “ ‘assault’ ”); People v Archie, 167 AD2d 925, 926 (4th Dept 1990) (holding that the hospital record containing the victim’s statement that he was assaulted by “ ‘several youths’ ” with “ ‘fists, knees and bicycles’ ” was germane to the diagnosis and treatment of his injuries); People v Anderson, 184 AD2d 1005 (4th Dept 1992) (holding that the victim’s hearsay statements in history portion of hospital records related to diagnosis and treatment of victim and thus were properly admitted); People v Egbert, 122 AD2d 599 (4th Dept 1986) (holding that a certified copy of hospital records showing treatment of the defendant was admissible but allowed redaction of some part of the history portion of the record); Matter of Fred S., 66 Misc 2d 683 (Fam Ct, Richmond County 1971), supra (holding that the record was admissible evidence as to how the injuries occurred); see also, 58 NY Jur 2d, Evidence and Witnesses, § 475 (“|E]ntries in a hospital record having to do with the cause of or the circumstances surrounding the injury on which the suit is based are inadmissible as hearsay, unless the cause of the injuries is inextricably intertwined with the extent of the injuries.”).

. Taragan v Abbott Labs., NYLJ, Mar. 27, 1992, at 22, cols 1, 2, supra (“If a doctor asks whether a patient smokes and, if so, for how many years he or she has smoked, that information is medically significant even if the patient is exhibiting at that moment no symptoms of lung cancer”).

. The Battered Woman Syndrome (BWS) may be diagnosed by a variety of psychological and behavioral characteristics and reactions such as a (1) “decrease in self-esteem, an emotional dependence upon the dominant male”, and (2) a learned helplessness—“a type of psychological ‘learned’ helpless- ness arising out of an inability to predict or control the violence” directed against the domestic violence victim (People v Torres, 128 Misc 2d 129, 132 [Sup Ct, Bronx County 1985]), characterized by a “feeling of no escape * * * and other characteristics common to the BWS” but “which are [not] common to the average person’s day-to-day experience.” (People v Ellis, 170 Misc 2d 945, 950, 951 [Sup Ct, NY County 1996].) “An examination of the legal his- tory of the ‘BWS’ shows that it has been found to have the required scientific basis for admission into evidence in New York”. (People v Ellis, supra, at 949.)

. See,People v Henson, 33 NY2d 63, 73 (1973) (holding that the “bat- tered child syndrome” has become an accepted medical diagnosis). medical diagnosis).