People v Hooper (2025 NY Slip Op 02623)

People v Hooper

2025 NY Slip Op 02623

Decided on May 1, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 1, 2025

113570
[*1]The People of the State of New York, Respondent,
v
Jordon Hooper, Appellant.

Calendar Date:March 25, 2025

Before:Egan Jr., J.P., Pritzker, Lynch, Ceresia and Mackey, JJ.

Rural Law Center of New York, Inc., Plattsburgh (Kristin A. Bluvas of counsel), for appellant.
Gary M. Pasqua, District Attorney, Canton (Matthew L. Peabody of counsel), for respondent.

Egan Jr., J.P.
Appeal from a judgment of the County Court of St. Lawrence County (Gregory Storie, J.), rendered April 4, 2022, upon a verdict convicting defendant of the crimes of assault in the second degree, criminal obstruction of breathing or blood circulation and endangering the welfare of a child (four counts).
On June 27, 2020, defendant resided with his then-girlfriend, her three children and the seven-year-old victim in an apartment in the City of Ogdensburg, St. Lawrence County. Defendant's girlfriend called the police to report that, while she and her children were in the residence that morning, there was a domestic incident in which defendant had injured the victim. An officer who responded observed obvious injuries to the victim. According to the girlfriend, defendant returned to the residence later that evening and angrily confronted her about calling the police, only leaving after she threatened to call them again and began to do so.
As a result of his activities that day, defendant was charged in an indictment with assault in the second degree, criminal obstruction of breathing or blood circulation, four counts of endangering the welfare of a child and one count of attempted intimidating a victim or witness in the second degree. The matter eventually proceeded to a jury trial where, after the close of evidence, County Court found that legally sufficient evidence did not support the witness intimidation charge and dismissed it. The remaining counts were submitted to the jury — which was not charged, as unsuccessfully requested by defendant, to consider assault in the third degree as a lesser included offense of assault in the second degree — and the jury found defendant guilty of all of them. County Court sentenced defendant to six years in prison, to be followed by three years of postrelease supervision, on the assault conviction and lesser concurrent jail terms on the remaining misdemeanor convictions. County Court further ordered defendant to pay restitution and surcharges in the amount of $7,343.20. Defendant appeals.
Defendant first argues that the verdict is not supported by legally sufficient proof and is against the weight of the evidence, suggesting in particular that the proof did not establish that he intended to inflict serious physical injury on the victim or that she actually sustained one as required to commit second-degree assault (see Penal Law §§ 10.00 [10]; 120.05 [1]). The sole argument raised by defendant in his trial motion to dismiss was that the People failed to establish his intent to commit serious physical injury and, as a result, his legal sufficiency argument is only preserved on that point (see CPL 470.05 [2]; People v Hawkins, 11 NY3d 484, 492 [2008]). Nevertheless, we will consider both issues in assessing whether "the verdict is against the weight of the evidence, which necessarily requires us to assess whether the People proved all elements of the charged crimes beyond a reasonable doubt" (People v Rock, 231 AD3d [*2]1315, 1316 [3d Dept 2024]; see People v Kancharla, 23 NY3d 294, 303 [2014]).
The trial included the testimony of the victim and defendant's girlfriend regarding what transpired on the morning of June 27, 2020, as well as photographs of the injuries the victim sustained during the incident and the testimony of a dentist who treated the victim after the fact. Although the victim and defendant's girlfriend did not agree in all respects as to what occurred, they gave largely consistent accounts of how defendant began yelling at the victim after she misbehaved, punishing her by spanking her and making her squat with her back against the wall. The victim and defendant's girlfriend agreed that he soon picked the victim up by the throat and pinned her against the wall with her feet off the ground. He then proceeded to choke the victim to the point that she was "struggling" to breathe and trying to grab his hands to make him release her. Defendant eventually released the victim by either throwing or dropping her, at which point her "face smashed against the ground," causing her to get "all scratched up" and break one of her front teeth.[FN1] Defendant then straddled her chest while she was on the floor, screaming at her and repeatedly slapping her across the face, only getting off her after his girlfriend repeatedly told him to stop.
Apart from those firsthand accounts of what occurred, the People also presented photographs of the victim taken by a responding officer later that day, which document the bruising and scratches on her head, neck and arms, as well as a broken front tooth. Moreover, the dentist who examined the victim in May 2021 testified that she had broken one of her adult front teeth, a bodily organ, which could not have happened without significant force. He also described how the tooth could not be repaired until the victim was fully grown and would require "continual [dental] work" after that, as well as how, in the meantime, the missing tooth could make it hard for her to eat and speak normally and may well be disfiguring enough to subject her to ridicule from other children.
Viewed in the light most favorable to the People, this proof — that defendant choked the victim hard enough to cause difficulty breathing, threw or dropped her to the ground with enough force to cause a broken tooth, and caused her to sustain obvious facial injuries from either that or his repeatedly slapping her — was legally sufficient for the jury to infer that he intended to cause her serious physical injury (see People v Audi, 88 AD3d 1070, 1072 [3d Dept 2011], lv denied 18 NY3d 856 [2011]; People v Lanier, 44 AD3d 547, 547 [1st Dept 2007], lv denied 9 NY3d 1035 [2008]; cf. People v McCloud, 121 AD3d 1286, 1287-1288 [3d Dept 2014], lv denied 25 NY3d 1167 [2015]). The verdict demonstrates that the jury did make that inference. The jury was further free to, and did, determine that the victim's broken front tooth, which the dentist testified could not be repaired until [*3]she reached adulthood and would cause ongoing medical and cosmetic problems, constituted a serious physical injury in that it resulted in a serious and protracted impairment of a bodily organ's function and/or disfigurement (see People v Everett, 110 AD3d 575, 575-576 [1st Dept 2013]; People v Snyder, 100 AD3d 1367, 1368 [4th Dept 2012], lv denied 21 NY3d 1010 [2013]; see also People v Howard, 79 AD2d 1064, 1065 [3d Dept 1981]). Accordingly, "while a different verdict would arguably not have been unreasonable, upon our independent review of the record in a neutral light, and giving deference to the jury's opportunity to observe the witnesses, we find that the jury gave the evidence its proper weight and was justified in finding defendant guilty" of assault in the second degree (People v Audi, 88 AD3d at 1073).
Defendant next contends, and we agree, that County Court erred in refusing his request to charge assault in the third degree as a lesser included offense of assault in the second degree. Assault in the second degree is committed when a person acts "[w]ith intent to cause serious physical injury to another person [and] causes such injury to such person or to a third person" (Penal Law § 120.05 [1]); assault in the third degree, in contrast, is committed when a person acts "[w]ith intent to cause physical injury to another person [and] causes such injury to such person or to a third person" (Penal Law § 120.00 [1]). There is no dispute that assault in the third degree as defined in Penal Law § 120.00 (1) is a lesser included offense of assault in the second degree as defined in Penal Law § 120.05 (1), as a person could intend and cause physical injury to a victim while not intending or causing serious physical injury (see People v Terk, 24 AD3d 1038, 1041 [3d Dept 2005]; People v Luck, 294 AD2d 618, 620-621 [3d Dept 2002], lv denied 98 NY2d 699 [2002]). The trial proof here left little doubt that defendant began by attempting to discipline the victim but that things soon escalated to the point where he was trying to injure her, including by picking her up by her throat and holding her against a wall for a few minutes, allowing her to fall to the floor and then slapping her. This proof permitted the finding that defendant intended to cause a serious physical injury which "create[d] a substantial risk of death, or . . . serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ," and such an injury resulted when the victim fell to the floor and broke her tooth (Penal Law § 10.00 [10]).
That said, it was unclear whether defendant anticipated that the conscious victim would fall when he released her, and there was conflicting testimony as to whether he threw her to the floor with enough force to break her tooth or she simply took a bad fall after he let her drop. The victim's treating dentist further conceded in his testimony that a tooth could accidentally break and [*4]that he had seen such injuries result from incidents as minor as "biting down on forks wrong." When viewed in the light most favorable to defendant, this proof could allow "a jury [to] reasonably conclude that defendant intended and caused 'physical injury' to the victim" as opposed to serious physical injury (People v Terk, 24 AD3d at 1041, quoting Penal Law § 10.00 [9]; see People v Hall, 56 NY2d 547, 547 [1982]; People v Fasano, 107 AD2d 1052, 1052-1053 [4th Dept 1985]). It follows that County Court erred in refusing to charge assault in the third degree as a lesser included offense of assault in the second degree as charged in count 1 of the indictment, and remittal for a new trial on that count is required (see People v Lavalley, 158 AD3d 993, 997 [3d Dept 2018]).
We reject defendant's further contention that the entire judgment of conviction must be reversed because he received the ineffective assistance of counsel. Much of trial counsel's allegedly deficient conduct — which amounts to speculation by defendant that counsel failed to obtain available evidence to challenge the accounts of the victim and defendant's former girlfriend, could have succeeded in reducing the amount of restitution he was directed to pay or could have advanced a meritorious motion to vacate the judgment of conviction — involve "matters that are largely outside of the record and are therefore more properly pursued in a CPL article 440 motion" (People v Lafountain, 200 AD3d 1211, 1216 [3d Dept 2021], lv denied 38 NY3d 951 [2022]; see People v Briggs, 169 AD3d 1369, 1370 [4th Dept 2019], lv denied 33 NY3d 974 [2019]). Defendant also complains that trial counsel failed to exhaust the defense's peremptory challenges during jury selection, but does not show the lack of a strategic explanation for that "quintessentially tactical decision" (People v Horton, 181 AD3d 986, 997 [3d Dept 2020] [internal quotation marks and citations omitted], lv denied 35 NY3d 1045 [2020]; see People v Case, 197 AD3d 985, 988 [4th Dept 2021], lv denied 37 NY3d 1160 [2022]). Defendant similarly fails to explain how trial counsel could have prevented relevant photographs depicting the victim's injuries from being admitted into evidence, and counsel cannot be faulted for failing to raise an objection on that point that stood "little chance of success" (People v Pica-Torres, 230 AD3d 855, 861 [3d Dept 2024], lv denied 42 NY3d 1054 [2024]; see People v Caban, 5 NY3d 143, 152 [2005]). Indeed, our review of the record reflects that trial counsel mounted a solid defense in the face of damning proof that defendant had attacked and injured the victim, arguing that he had not intended to seriously injure her as required to commit second-degree assault and eliciting testimony from the People's witnesses to support that theory. To put it simply, our assessment of "the evidence, the law, and the circumstances [in this] case, viewed in totality and as of the time of the representation," leaves us satisfied that [*5]defendant received meaningful representation (People v Baldi, 54 NY2d 137, 147 [1981]; see People v Burgos, 38 NY3d 56, 65 [2022]).
Finally, to the extent that defendant challenges the sentences rendered on his misdemeanor convictions as opposed to the one for assault in the second degree that must be reversed, we perceive nothing harsh or severe in them.
Pritzker, Lynch, Ceresia and Mackey, JJ., concur.
ORDERED that the judgment is modified, on the law, by reversing defendant's conviction of assault in the second degree under count 1 of the indictment and vacating the sentence imposed thereon; matter remitted to the County Court of St. Lawrence County for a new trial on said count; and, as so modified, affirmed.

Footnotes

Footnote 1: The victim suggested in her testimony that she knocked out a second tooth at this point, but there was no other proof on that point and her treating dentist only discussed her broken front tooth.